OPINION OF THE COURT
Alexander, J.
A witness at an examination before trial in a medical malpractice action may invoke the physician-patient privilege (CPLR 4504) to avoid revealing the substance of confidential communications made to her physician, but may not refuse to testify as to relevant medical incidents or facts concerning herself or her children. Accordingly, we find no error in the Appellate Division’s decision granting defendants’ motion for further examination of the nonparty witness.
The infant plaintiff, Rashan Williams, was born on March 17, 1979, and, the complaint alleges, suffered brain damage as a result of negligent obstetrical care. This action was brought by the infant and his father. At an examination before trial, plaintiffs produced the infant’s mother, a nonparty witness, and the following exchanges took place:
“Q. How many children do you have? A. Three.
"Q. How old are they, and their names? A. Melinda Williams; she is 20. Cedric Williams, 18; Rashan Williams, 4.
"Q. And where was Melinda born? A. Petersburg, Virginia.
"Q. Was she a full-term? A. Yes.
*394 "Q. Did she have any congenital problems or physical problems when she was born?
"Mr. Meisenberg [plaintiffs’ attorney]: Objection. When I object, you wait for me to finish. I direct you not to answer that question.
* * *
"Q. Did you have any other pregnancies besides Melinda and Cedric? A. Yes. I had one abortion.
"Q. When was that?
"Mr. Meisenberg: Just note my objection for the record. Do not answer that question.
* * *
"Q. Did you ever have a child that was born with an injury? A. No.
"Q. Do you want to correct that? A. Yes.
"Q. And what is your answer now? A. Yes.
"Q. And what child was that? A. Rashan Williams.
"Q. What injury was he born with? A. Arm injury, brain injury.
"Q. Where was Cedric born? A. Queens.
"Q. Where? A. St. Alban’s Naval Hospital, 1965.
"Q. And Melinda? That was '63? A. '62.
"Q. And Rashan was born in '79? A. '79.
"Q. For ten years prior to or before the birth of Rashan— that would be from 1969 to 1979 — were you under the care of any physician — A. No.
"Q. —for anything?
"Mr. Meisenberg: Note my objection for the record.
"Q. Were you seen at the Roosevelt Hospital Clinic for any reason during that ten-year period? A. G.Y.N.
"Q. Were you seen by any particular doctor at that clinic or were you followed by any particular physician? A. No.
"Q. Were you taking any medication of any kind for one year before the birth of Rashan? A. No.
"Mr. Meisenberg: Note my objection. I will make an objection for the record.
"Q. Did Melinda have any learning disabilities?
"Mr. Meisenberg: Objection. Direct that witness not to *395 answer, based on the prior questions [sic] that were stated for the record.
"Q. Did Cedric have any learning disabilities?
"Mr. Meisenberg: Same objection.”
Defendants subsequently moved for an order directing the infant’s mother to appear for further examination before trial and to answer questions concerning her prior health history and the birth and physical condition of her two eldest children. Although Special Term expressed its view that disclosure should be directed, it denied the motion on constraint of the Second Department’s holding in Hughson v St. Francis Hosp. (93 AD2d 491). The Appellate Division reversed and granted the motion for further examination before trial. The court held that "there is no [physician-patient] privilege in testimony as to what actually happened. The privilege applies to confidential information given to the physician which enables him to act in his professional capacity” (108 AD2d 9, 10-11).
Under this State’s liberal discovery scheme, "[t]here shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action” (CPLR 3101 [a]; Allen v Crowell-Collier Pub. Co., 21 NY2d 403). However, "[u]pan objection of a party privileged matter shall not be obtainable” (CPLR 3101 [b]). Potentially shielded from discovery, therefore, are communications deemed privileged under CPLR 4504, which provides in part that: "Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, or dentistry shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
Although the physician-patient privilege did not exist at common law, New York became the first jurisdiction to adopt the privilege by statute in 1828. Its enactment was based on the belief that fear of embarrassment or disgrace flowing from disclosure of communications made to a physician would deter people from seeking medical help and securing adequate diagnosis and treatment (3 Commission on Revision of Statutes of NY, at 737 [1836]; Fisch, NY Evidence §§ 541, 557 [2d ed]; see, Edington v Mutual Life Ins. Co., 67 NY 185, 194). The privilege has been severely criticized because of serious doubts, that its truth-inhibiting effect can be justified by any real *396 promotion of the public health (e.g., Fisch, op. cit. § 557; 8 Wigmore, Evidence § 2380a [McNaughton rev 1961]; Morgan, Suggested Remedy for Obstructions to Expert Testimony by Rules of Evidence, 10 U Chi L Rev 285 [1942]; Lipscomb, Privileged Communications Statute—Sword and Shield, 16 Miss LJ 181 [1944]; Chafee, Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor’s Mouth on the Witness Stand?, 52 Yale LJ 607 [1943]; see, Koump v Smith, 25 NY2d 287, 293). The privilege applies at examinations before trial (Hughson v St. Francis Hosp., 93 AD2d 491, 498, supra; Hughes v Kackas, 3 AD2d 402), and it covers both oral testimony and documents, such as hospital records (Fisch, op. cit. § 542, at 358), which presumably are drawn up in large part based on communications imparted by the patient to the treating physician.
Although the statute is phrased in terms of not allowing a medical professional to reveal information acquired in a professional capacity from a patient, it serves also to protect the patient from being compelled to disclose the substance of a communication made to the medical professional in an attempt to obtain treatment (Hughson v St. Francis Hosp., 93 AD2d, at pp 497-498, supra; Galligano v Galligano, 245 App Div 743; Fisch, op. cit. § 542, at 358). Were the rule otherwise, little practical protection would be accorded patient-doctor communications (Hughson v St. Francis Hosp., 93 AD2d, at p 498, supra). That which the privilege seeks to protect, however, and thereby foster, are confidential communications, not the mere facts and incidents of a person’s medical history (see, Klein v Prudential Ins. Co., 221 NY 449, 453; Richardson, Evidence § 432 [Prince 10th ed]). Instructive on this point is the United States Supreme Court decision in Upjohn Co. v United States (449 US 383), which dealt with the attorney-client privilege. The Upjohn court held that: " '[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?” but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.’ Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (ED Pa 1962).” (449 US, at pp 395-396 [emphasis in original].) Thus, just as "a party cannot conceal a fact merely by revealing it to his lawyer” (State ex rel. Dudek v Circuit *397 Ct, 34 Wisc 2d 559, 580, 150 NW2d 387, 399), a witness may not refuse to answer questions regarding matters of fact, such as those posed in this case, as to whether her children had any physical or congenital problems, whether she was in the care of a physician or was taking medication during a certain period of time, or concerning the facts surrounding an abortion merely because those topics relate to events that required medical care or advice from a physician. In determining whether certain information is protected under the physician-patient privilege, the burden is on the party asserting the privilege " 'to show the existence of circumstances justifying its recognition’ (Bloodgood v. Lynch, 293 N. Y. 308, 314)” (Koump v Smith, 25 NY2d 287, 294, supra).
We have no need on this appeal to decide whether the information sought by defendants is relevant. Such a determination must be made by the trial court based on the circumstances of each case with due regard for the policy favoring broad pretrial discovery (see, CPLR 3101 [a]; Allen v Crowell-Collier Pub. Co., 21 NY2d 403, supra). We interpret the certified question of law as asking only whether the Appellate Division had the power to allow further examination of the witness at defendants’ option. Because we hold that physician-patient privilege does not provide a basis for the witness here to refuse to reveal the information sought, the certified question is answered in the affirmative.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye and Titone concur; Judge Meyer taking no part.
Order affirmed, with costs. Question certified answered in the affirmative.