OPINION OF THE COURT
Alexander, J.
In Koump v Smith (25 NY2d 287), we noted that a litigant does not waive the physician-patient privilege merely by defending a personal injury action in which his or her mental or physical condition is in controversy unless, in so defending, the litigant "affirmatively asserts the condition either by way of counterclaim or to excuse the conduct complained of by the plaintiff” (id., at 294). Today, we hold that where a party defending a personal injury action validly asserts the privilege and has not affirmatively placed his or her medical condition in issue, the plaintiff may not effect a waiver of the privilege merely by introducing evidence demonstrating that the defen *281 dant’s physical condition is genuinely "in controversy” within the meaning of the statute permitting discovery of medical records (CPLR 3121 [a]).
I.
The complaint states that on July 13, 1985, Tonia Dillenbeck was killed and her son, Michael Dillenbeck, was seriously injured when their automobile collided head on with another vehicle driven by defendant, Sherry Hess. It is alleged that the accident occurred when defendant, who was traveling north on Route 7 in the Town of Conklin, negligently crossed the center line and struck the Dillenbecks’ vehicle as it was traveling in the southbound lane. The complaint charges that defendant’s intoxicated condition was a proximate cause of the accident and that the codefendants, owners and operators of Red’s Good Luck Tavern and Eddie’s Conklin Inn where defendant allegedly had been drinking throughout much of the afternoon and evening, negligently contributed to her intoxication by serving excess quantities of alcohol to her. The police accident report notes the time of the accident as 9:45 P.M.
It is not disputed that defendant received serious injuries in the accident and was hospitalized immediately thereafter. Although it appears that a blood alcohol test was performed at the hospital for diagnostic purposes, no test to determine blood alcohol content was administered at the direction of a police officer or by court order pursuant to Vehicle and Traffic Law § 1194.[1] In her answer, defendant simply denies the *282 allegations in the complaint and asserts the affirmative defenses of comparative negligence and the failure of plaintiffs to wear available seat belts.[2]
Alleging that defendant’s hospital records contain evidence of her blood alcohol content at the time of the accident, plaintiffs moved, pursuant to CPLR 3121 (a), to compel defendant to disclose any medical records relating to her physical condition on the date of the accident, including the results of any blood alcohol test administered to defendant upon her admission to the hospital. The papers submitted in support of the motion included an affidavit by plaintiffs’ attorney, the police accident report, and three affidavits of persons who claim to have been with defendant prior to the accident and to have observed her consume alcohol over approximately a seven-hour period. Plaintiffs also submitted excerpts from defendant’s examination before trial wherein she claimed to have no memory of the events occurring prior to the accident except that she remembered being at Red’s Good Luck Tavern earlier in the day for a union meeting and having one drink while she was there. Excerpts from the deposition testimony of the manager of Eddie’s Conklin Inn, where defendant allegedly continued to imbibe after leaving Red’s Good Luck Tavern, reveal that following the accident the manager was informed by his bartender that on the night of the accident the bartender had "shut off” a woman from alcoholic beverages because she had been drinking excessively and that the woman might have been defendant.[3]
By cross motion defendant sought an order of protection (CPLR 3122), asserting the physician-patient privilege (CPLR 4504). Supreme Court denied plaintiffs’ motion and granted *283 defendant’s cross motion, concluding that inasmuch as defendant had not affirmatively placed her physical condition in issue, the physician-patient privilege precluded discovery of her medical records (CPLR 3101 [b]; 4504 [a]).
A majority of the Appellate Division affirmed, stating that although defendant’s physical condition at the time of the accident "is undeniably in issue”, defendant had not affirmatively placed her condition in controversy and that under Koump v Smith (supra) the privilege is not waived where the defendant simply denies the allegations in the complaint (140 AD2d 766, 767). The court concluded further that defendant had not waived the privilege in testifying that she suffers from amnesia concerning the accident since she was not seeking damages for that condition nor was she claiming that her amnesia in any way excused her conduct (id., at 767). The two dissenters, relying on Judge Bergan’s concurrence in Koump, would have allowed inspection of defendant’s hospital records, concluding that the privilege must yield where, as here, plaintiffs submit evidence demonstrating that defendant’s physical condition is genuinely "in controversy”.
The Appellate Division granted leave to appeal positing the following certified question: "Did this court err as a matter of law in affirming the order of the Supreme Court which denied plaintiffs’ motion for discovery of defendant Sherry L. Hess’ medical and hospital records and granted said defendant’s cross motion for an order of protection?” We now affirm and answer the certified question in the negative.
II.
The physician-patient privilege, presently contained in CPLR 4504, is entirely a creature of statute. At common law, confidential communications between physicians and patients received no protection against disclosure in a legal proceeding, however unethical such disclosure may have been viewed when occurring outside the courtroom (Fisch, NY Evidence § 541 [2d ed]; McCormick, Evidence § 98 [3d ed]; see, Williams v Roosevelt Hosp., 66 NY2d 391, 395; Koump v Smith, 25 NY2d, at 293, supra). The common-law rule is perhaps best illustrated by the Duchess of Kingston’s Trial, wherein the Duchess was tried for bigamy and the Crown sought to compel her physician to testify concerning certain admissions made by the Duchess in confidence. When the physician expressed reluctance to divulge the secret admissions of his patient, the *284 court ordered him to testify, explaining: "If a surgeon was voluntarily to reveal these secrets, to be sure, he would be guilty of a breach of honor and of great indiscretion; but to give that information in a court of justice, which by the law of the land he is bound to do, will never be imputed to him as any indiscretion whatever” (The Duchess of Kingston’s Trial, 20 How St Trials 355, 573 [1776]; Shuman, The Origins of the Physician-Patient Privilege and Professional Secret, 39 Sw LJ 661, 671 [1985]).
New York State became the first jurisdiction to depart from the common-law rule when it adopted the physician-patient privilege by statute in 1828 (2 Rev Stat of NY, part III, ch 7, tit 3, § 73 [1828]). In its current form, the privilege prohibits disclosure of any information acquired by a physician "in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity” (CPLR 4504 [a]). The privilege applies not only to information communicated orally by the patient, but also to "information obtained from observation of the patient’s appearance and symptoms, unless the facts observed would be obvious to laymen” (Fisch, NY Evidence § 544, at 361 [2d ed]; see, 5 Weinstein-Korn-Miller, NY Civ Prac ]¶ 4504.08; Matter of Coddington, 307 NY 181, 193; Edington v Mutual Life Ins. Co., 67 NY 185, 194).[4] Moreover, the form in which the information is sought to be introduced is irrelevant, as the privilege operates whether the information is contained in a patient’s medical files or is sought to be introduced at trial in the form of expert testimony (see, Williams v Roosevelt Hosp., 66 NY2d, at 396, supra; Davis v Supreme Lodge, Knights of Honor, 165 NY 159, 163; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4504.08a).
*285 We have previously noted that this State’s codification of the physician-patient privilege was based largely "on the belief that fear of embarrassment or disgrace flowing from disclosure of communications made to a physician would deter people from seeking medical help and securing adequate diagnosis and treatment” (Williams v Roosevelt Hosp., 66 NY2d, at 395, supra; Matter of Camperlengo v Blum, 56 NY2d 251, 254-255; Edington v Mutual Life Ins. Co., 67 NY 185, 192, supra; see, Fisch, NY Evidence § 541 [2d ed]; McCormick, Evidence § 98 [3d ed]). Additionally, it was feared that physicians would alter or conceal the truth when forced, in the absence of any privilege, to choose between their legal duty to testify and their professional obligation to honor their patients’ confidences (Fisch, NY Evidence § 541 [2d ed]; Reports of Commissioners on Revision of Statutes of NY, 3 Rev Stat of NY, Appendix, at 737 [1836]). A third rationale supporting the privilege that has gained increased currency in recent years is premised on the need to protect the privacy expectations of patients (see generally, Developments in the Law, Medical and Counseling Privileges, 98 Harv L Rev 1530, 1544-1548 [1985]; McCormick, Evidence § 105, at 259 [3d ed]). This court recognized long ago that "[t]he disclosure by a physician, whether voluntary or involuntary, of the secrets acquired by him while attending upon a patient in his professional capacity, naturally shocks our sense of decency and propriety, and this is one reason why the law forbids it” (Davis v Supreme Lodge, Knights of Honor, 165 NY 159, 163, supra). Thus, it has been argued that "the value placed on privacy, manifested both by general concerns for privacy and by the specific concerns for an individual’s bodily integrity found in constitutional, statutory, and common law doctrines, suggests a strong policy basis” for the privilege (Medical and Counseling Privileges, op. cit., 98 Harv L Rev, at 1548; see, Whalen v Roe, 429 US 589, 598-599 [government disclosure of private medical information implicates constitutional right to privacy]).
Although the physician-patient privilege has been criticized by commentators who maintain that there is little empirical support for the proposition that the privilege promotes public health (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4504.02; Fisch, NY Evidence § 557 [3d ed]; see, Williams v Roosevelt Hosp., 66 NY2d, at 395-396, supra), that the principle of medical confidentiality is antiquated and no longer regularly observed by physicians (Fisch, NY Evidence § 557 [2d ed]; *286 Goldberg, The Physician-Patient Privilege — An Impediment to Public Health, 16 Pac LJ 787, 788-789 [1985]), and that protection of patients’ privacy is not a sufficiently important interest to justify nondisclosure of legally pertinent medical information (McCormick, Evidence § 105, at 259 [3d ed]; Goldberg, op. cit., at 803), the privilege remains rooted in both the statutory law and public policy of New York State. The issue on this appeal, therefore, is whether the information requested by plaintiffs, acquired by defendant’s physician in the course of treating her for injuries incurred in the automobile accident and thus privileged under CPLR 4504, must be disclosed once it is established that defendant’s physical condition is "in controversy” and thus subject to discovery under CPLR 3121 (a), notwithstanding that defendant has not placed her physical condition in controversy or otherwise waived the privilege.
III.
In Koump v Smith (25 NY2d 287, supra), we examined the operation of the physician-patient privilege in the context of a personal injury action. In that case, the plaintiff was injured in an automobile accident and, as here, it was alleged that the driver of the offending vehicle was intoxicated at the time of the collision. The plaintiff served a discovery request pursuant to CPLR 3121 (a), alleging that the defendant’s physical condition was "in controversy” within the meaning of the statute and demanding production of the defendant’s hospital records relating to the accident. The defendant refused to comply with the request and the plaintiff moved for a court order directing compliance. Citing the physician-patient privilege, the Appellate Division affirmed the trial court’s denial of the motion. We affirmed, concluding that plaintiff had not demonstrated that defendant’s physical condition was "in controversy” within the meaning of CPLR 3121 (a) and that, in any event, the requested information was protected by the physician-patient privilege (CPLR 4504) which defendant had not waived by merely denying the allegations in the complaint.
We acknowledged in Koump that there is a strong presumption in favor of discovery and that "full disclosure of all evidence material and necessary in the prosecution or defense of an action” is ordinarily mandated by CPLR 3101. Consequently, where the mental or physical condition of a party is *287 in controversy, a notice may be served pursuant to CPLR 3121 (a) requiring that the party submit to a medical examination or make available for inspection relevant hospital and medical records. The initial burden of proving that a party’s physical condition is "in controversy” is on the party seeking the information and it is only after such an evidentiary showing that discovery may proceed under the statute (Koump v Smith, 25 NY2d, at 300, supra).
Once this preliminary burden is satisfied, however, discovery still may be precluded if the requested information is privileged and thus exempted from disclosure (CPLR 3101 [b]). The statutory scheme, by expressly providing an exception for privileged information, clearly contemplates that certain information, though otherwise material and relevant to a legal dispute, "shall not be obtainable” where it is shown to be privileged (CPLR 3101 [b]). Physician-patient communications, privileged under CPLR 4504, may therefore be shielded from discovery and when it has been established that the requested information is subject to discovery under CPLR 3121 (a), the burden shifts to the person claiming the privilege to assert it by seeking a protective order pursuant to CPLR 3122 (Koump v Smith, 25 NY2d, at 294, supra; see, Bloodgood v Lynch, 293 NY 308, 314). Once the privilege is validly asserted, it must be recognized and the sought-after information may not be disclosed unless it is demonstrated that the privilege has been waived (CPLR 4504 [a]; see, Koump v Smith, 25 NY2d, at 294, supra; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4504.19; Fisch, NY Evidence § 554 [2d ed]).
A litigant will be deemed to have waived the privilege when, in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical condition in issue (Koump v Smith, 25 NY2d, at 294, supra). As we stated in Koump, this rule is necessary because, notwithstanding New York’s strong policy in favor of the privilege, a party should not be permitted to affirmatively assert a medical condition in seeking damages or in defending against liability while simultaneously relying on the confidential physician-patient relationship as a sword to thwart the opposition in its efforts to uncover facts critical to disputing the party’s claim (id.; see, 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3121.01). Nevertheless, a party does not waive the privilege whenever forced to defend an action in which his or her *288 mental or physical condition is in controversy.[5] In order to effect a waiver, the party must do more than simply deny the allegations in the complaint — he or she must affirmatively assert the condition "either by way of counterclaim or to excuse the conduct complained of by the plaintiff” (Koump v Smith, 25 NY2d, at 294, supra).
IV.
Applying these principles to the facts of this case, we conclude that plaintiffs have satisfied their threshold burden of demonstrating that defendant’s physical condition at the time of the accident is in controversy. The affidavits submitted in support of their discovery motion indicate that defendant had been drinking rather heavily over a seven-hour period leading up to the accident and there is at least some suggestion, albeit hearsay, that she may have been "shut off” by the bartender at Eddie’s Conklin Inn because of her intoxicated condition. Moreover, it is a matter of public record, alluded to in the affidavit of plaintiffs’ attorney, that defendant was convicted of criminally negligent homicide based on the events surrounding the accident. This evidence, we think, is plainly sufficient to demonstrate that defendant’s physical condition at the time of the accident is "in controversy” within the *289 meaning of CPLR 3121 (a) and thus potentially subject to discovery.
The information sought by plaintiffs, however — hospital records relating to defendant’s physical condition and blood alcohol content following the accident — indisputably falls within the scope of the physician-patient privilege as information acquired by a physician "in attending [defendant] in a professional capacity, and which was necessary to enable him to act in that capacity” (CPLR 4504). Defendant cannot be said to have waived the privilege simply by denying the allegations in the complaint or by testifying that she cannot remember any details of the incident where the fact of her memory loss is not being advanced to excuse her conduct (Koump v Smith, 25 NY2d, at 294, supra). Nor has she waived the privilege by asserting the defenses of comparative negligence and the failure of plaintiffs to wear seat belts since neither defense seeks to excuse the conduct complained of by asserting a mental or physical condition. Moreover, the mere fact that the privilege presents an obstacle to plaintiffs’ discovery of legally pertinent information that would assist them in proving their claim is not, as the dissent seems to suggest, evidence that the privilege is not properly recognized in this case. Indeed, it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated.
Plaintiffs’ contention that the privilege is somehow forfeited upon their submission of evidentiary facts demonstrating that defendant’s physical condition is in controversy is without merit and confuses the amount of evidence required to justify discovery under CPLR 3121 (a) with that required under CPLR 4504 to establish waiver. Plaintiffs may not effect a waiver of the privilege for the simple reason that the privilege is not theirs to waive but rather belongs to the patient (Richardson, Evidence § 434 [Prince 10th ed]; see, Prink v Rockefeller Center, 48 NY2d 309, 314; Iseman v Delmar Medical-Dental Bldg., 113 AD2d 276, 278). Once it has been shown that the requested information is privileged under the statute, therefore, only the patient or an authorized representative may waive the privilege and permit disclosure (CPLR 4504 [a]; Richardson, Evidence § 435 [Prince 10th ed]; 5 Weinstein- *290 Korn-Miller, NY Civ Prac ¶ 4504.19; Fisch, NY Evidence § 554 [2d ed]).[6] That has not occurred in this case and thus plaintiffs’ discovery motion was properly denied. We have examined plaintiffs’ remaining contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the negative.

. We note in passing that section 1195 of the Vehicle and Traffic Law requires that the blood alcohol test results of any person arrested for operating a motor vehicle while under the influence of alcohol be admitted into evidence where such results are obtained pursuant to a chemical test administered at the direction of a police officer or by court order (Vehicle and Traffic Law §§ 1192, 1194). This statutory provision, however, obviously does not contemplate the mandatory disclosure of blood alcohol evidence not obtained in the context of a possible criminal prosecution under the Vehicle and Traffic Law. Furthermore, we see no "unnecessary inconsistency” (dissenting opn, at 292) in declining to import the provisions of that criminal discovery statute into this civil case to compel disclosure of hospital records containing information acquired by defendant’s physician for the express purpose of medical treatment. This is particularly true where the Legislature has not provided the slightest indication that it intended to abrogate the protection accorded ordinary physician-patient communications under CPLR 3101 (b) and 4504 (a) in all cases where blood alcohol evidence is sought in connection with an action arising out of a motor vehicle accident.

. Following the accident, defendant was indicted and charged with second degree manslaughter, vehicular manslaughter, third degree assault, second degree reckless endangerment and operating a vehicle while under the influence of alcohol. After a jury trial, defendant was convicted of the lesser included offense of criminally negligent homicide and acquitted of all other charges. The results of the blood alcohol test administered to defendant at the hospital, indicating a blood alcohol level of .27%, were ruled inadmissible at defendant’s criminal trial, the court concluding that the test results were protected by the physician-patient privilege and that the privilege had not been waived.

. Excerpts from the minutes of defendant’s sentencing upon her conviction of criminally negligent homicide confirming that a blood alcohol test was administered to defendant upon her admission to the hospital were also submitted, as was a copy of a written notification denying defendant’s claim for no-fault insurance benefits.

. The suggestion in the dissent that defendant’s blood alcohol test results may not qualify as a "communication” protected under CPLR 4504 is clearly erroneous and directly contradicted by the case law and expert authorities. Though a physician is not precluded from testifying concerning ordinary incidents and facts of a person’s medical history that are obvious to those without professional training, it is universally acknowledged that any medical information acquired by the physician through the application of professional skill or knowledge is protected by the statute (Richardson, Evidence § 432, at 424-425 [Prince 10th ed]; Fisch, NY Evidence § 544, at 361 [2d ed]; 5 Weinstein-Korn-Miller, NY Civ Prac ][ 4504.08; see, Williams v Roosevelt Hosp, 66 NY2d 391; Klein v Prudential Ins. Co., 221 NY 449, 453). Quite clearly, the information obtained by defendant’s physician in administering a blood alcohol test to defendant was the product of professional skill and knowledge and would not have been apparent to a layman uninitiated in the medical arts. That information, therefore, is without question a protected communication under CPLR 4504.

. The dissent is incorrect in asserting that in Koump this court concluded that the privilege is automatically waived whenever the defendant’s physical condition is genuinely in controversy. We decided no such thing, but merely noted quite properly that the question of whether the defendant’s physical or mental condition is in controversy is the "primary question” that must be resolved before discovery may proceed under CPLR 3121 (a) (Koump v Smith, 25 NY2d 287, 291). Since the Appellate Division had not addressed this question, we discussed the case law in order to "lay down guidelines for the lower courts” for determining when the "in controversy” requirement of CPLR 3121 (a) will be deemed satisfied (id., at 295). We then distinguished those cases where the requirement was satisfied from the facts of Koump, concluding that the plaintiff in Koump had not met his preliminary burden of demonstrating that the defendant’s physical condition was "in controversy” within the meaning of the statute (id., at 300). That we affirmed the denial of discovery without prejudice to plaintiff’s making a new application means only that the plaintiff was afforded a second opportunity to satisfy the "in controversy” requirement. Nowhere in the opinion is it stated that the privilege is forfeited where the plaintiff is able to demonstrate that defendant’s physical condition is in controversy; in fact, the opinion compels just the opposite conclusion since it expressly states that the privilege is not waived "whenever [emphasis in original] a party defends an action in which his mental or physical condition is in controversy” (id., at 294 [emphasis added]).

. The dissent challenges the notion that the physician-patient privilege must be personally waived by the patient, apparently contending that the privilege may be waived by operation of law whenever the patient’s physical condition is generally " 'in controversy’ ”, regardless of whether the patient has affirmatively placed his or her condition in issue (dissenting opn, at 291). This argument is difficult to comprehend, however, since the sine qua non of any evidentiary privilege is that it is personal to, and can only be waived by, the privilege holder (see, e.g., Richardson, Evidence § 418 [attorney-client], § 425 [clergyman-penitent], § 453 [husband-wife]). Were a different rule applied to the physician-patient privilege, the privilege would become meaningless since confidential communications between physicians and patients would be at the mercy of third parties having no direct stake in that confidential relationship. And while certain exceptions to the privilege have been recognized by the Legislature and the courts (see, CPLR 4504 [b] [dentist required to disclose information for purpose of identification and where patient under age of 16 has been the victim of a crime]; Public Health Law § 3373 [privilege inapplicable for purposes of statute governing controlled substances]; see generally, Fisch, NY Evidence, §§ 547, 548, 549 [2d ed]; 5 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 4504.11, 4504.12, 4504.13, 4504.13a), this is not to be confused with the forced waiver of the privilege once it has been validly asserted.