*528
 
 OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Hospitals may assert a physician-patient privilege under CPLR 4504 (a) to maintain the confidentiality of patient medical records. The case before us involves the extent to which grand juries may, compatibly with CPLR 4504 (a), acquire medical records for the purpose of identifying criminal assailants.
 

 On May 25, 1998, an unidentified assailant stabbed a man to death in Manhattan. Police could determine only that the assailant was a Caucasian male in his 30s or early 40s and that he may have been bleeding when he fled the scene. Over 2V2 years later, still unable to identify him, the District Attorney of New York County conjectured that the assailant may have sought medical treatment at a local hospital shortly after the homicide. In early 2001, the District Attorney served grand jury subpoenas duces tecum on 23 hospitals, including four facilities operated by the New York City Health and Hospitals Corporation (HHC). Those subpoenas sought:
 

 “[a]ny and all records pertaining to any male Caucasian patient between the ages of 30 to 45 years, who was treated or who sought treatment on May 25th, 1998 through May 26th, 1998 for a laceration, puncture wound or slash, or other injury caused by or possibly caused by a cutting instrument and/or sharp object, said injury being plainly observable to a lay person without expert or professional knowledge; said records including but not limited to said patient’s name, date of birth, address, telephone number, social security number and other identifying information, except any and all information acquired by a physician, registered nurse or licensed practical nurse in attending said patient in a professional capacity and which was necessary to enable said doctor and/or nurse to act in that capacity.”
 

 Citing CPLR 4504 (a),
 
 [1]
 
 HHC invoked the physician-patient privilege and refused to turn over emergency room triage logs
 
 *529
 
 potentially responsive to these subpoenas, claiming that compliance would necessarily breach patient confidentiality in violation of the statute. After the District Attorney moved to hold HHC in contempt, HHC cross-moved for an order quashing the subpoenas. Supreme Court denied both motions but ordered HHC to submit the records for in camera inspection. The Appellate Division unanimously reversed and granted the motion to quash, holding that compliance with the subpoenas would violate the physician-patient privilege because “the assessment of the nature and cause of the injuries triggering production of the relevant documents involves an inherently medical evaluation” (287 AD2d 287, 288 [2001]). This Court granted the District Attorney leave to appeal, and we now affirm.
 

 Our analysis begins with the history and purpose of the physician-patient privilege. Common law did not recognize any confidentiality in communications between patients and medical professionals. New York was the first state to enact a physician-patient privilege statute
 
 (see
 
 2 Rev Stat of NY, part III, ch VII, tit III, § 73 [1st ed 1829];
 
 see also Dillenbeck v Hess,
 
 73 NY2d 278, 284 [1989]; Fisch, New York Evidence § 541, at 356 [2d ed 1977]). The modern codification of the privilege, CPLR 4504 (a), serves three core policy objectives implicated on this appeal
 
 (see generally
 
 Prince, Richardson on Evidence §§ 5-301, 5-302, at 246-249 [Farrell 11th ed]). First, the physician-patient privilege seeks to maximize unfettered patient communication with medical professionals, so that any potential embarrassment arising from public disclosure will not “deter people from seeking medical help and securing adequate diagnosis and treatment”
 
 (Dillenbeck
 
 at 285, quoting
 
 Williams v Roosevelt Hosp.,
 
 66 NY2d 391, 395 [1985];
 
 see also Matter of Grand Jury Proceedings [Doe],
 
 56 NY2d 348, 352 [1982]). Second, the privilege encourages medical professionals to be candid in recording confidential information in patient medical records, and thereby averts a choice “between their legal duty to testify and their professional obligation to honor their patients’ confidences”
 
 (Dillenbeck
 
 at 285, citing Fisch § 541;
 
 see also
 
 Revisers’ Reports and Notes, 3 Rev Stat of NY, at 737 [2d ed 1836]). Third, the privilege protects patients’ reasonable privacy expectations against disclosure of sensitive personal information
 
 (see
 
 Martin, Capra & Rossi, New York Evidence Handbook § 5.3.1, at 367 [1997]; Developments in the Law—
 
 *530
 
 Privileged Communications,
 
 Medical and Counseling Privileges,
 
 98 Harv L Rev 1530, 1544-1548 [1985]).
 

 Though in derogation of the common law, the physician-patient privilege is to be given a “broad and liberal construction to carry out its policy”
 
 (Matter of Grand Jury Investigation of Onondaga County,
 
 59 NY2d 130, 134 [1983];
 
 Matter of City Council of City of N.Y. v Goldwater,
 
 284 NY 296, 300 [1940]).
 
 [2]
 

 On this appeal, the District Attorney contends that enforcement of the subpoenas would not offend these policies or violate CPLR 4504 (a). The prosecutor argues that the subpoenas do not seek information acquired by means of medical diagnosis, treatment or expertise, and should be enforced because they purport to seek records only of injuries “plainly observable to a lay person without expert or professional knowledge.” We disagree.
 

 The physician-patient privilege generally does not extend to information obtained outside the realms of medical diagnosis and treatment. Indeed, because the policies underlying the physician-patient privilege implicate confidential patient relationships with medical professionals
 
 as
 
 medical professionals, we have generally limited the privilege to information acquired by the medical professional “through the application of professional skill or knowledge”
 
 (Dillenbeck,
 
 73 NY2d at 284 n 4). Accordingly, notwithstanding CPLR 4504 (a), medical professionals have been authorized to disclose observations of a heroin packet falling from a patient’s sock
 
 (see People v Capra,
 
 17 NY2d 670 [1966]), injuries on a patient’s cheek and lip
 
 (see People v Giordano,
 
 274 AD2d 748 [2000]), and a patient’s slurred speech and alcohol-laced breath incident to intoxication
 
 (see People v Hedges,
 
 98 AD2d 950 [1983]). Likewise, photographs of methadone-treatment patients taken to prevent unauthorized individuals from obtaining the drug
 
 (see People v Newman,
 
 32 NY2d 379, 384 [1973],
 
 cert denied
 
 414 US 1163 [1974]) and the names and addresses of a medical professional’s patients
 
 (see In re Albert Lindley Lee Mem. Hosp.,
 
 115 F Supp 643 [ND NY 1953],
 
 affd
 
 209 F2d 122 [2d Cir],
 
 cert denied sub nom. Cincotta v United States,
 
 347 US 960 [1954]) are outside
 
 *531
 
 the ambit of CPLR 4504 (a) and must be surrendered pursuant to a valid subpoena.
 

 We conclude, however, that
 
 Onondaga County
 
 controls this appeal and directs that the challenged subpoenas be quashed. In
 
 Onondaga County,
 
 as in the instant case, the victim was stabbed to death under circumstances that led investigators to conclude that the assailant may have left the scene bleeding. Endeavoring to identify the assailant, the District Attorney of Onondaga County issued a grand jury subpoena on a hospital, seeking, “all medical records pertaining to treatment of any person with stab wounds or other wounds caused by a knife”
 
 (Onondaga County,
 
 59 NY2d at 133). In quashing the subpoena, the Court held that compliance might have “require [d] the hospital to which it is addressed to divulge information protected by the physician-patient privilege”
 
 (id.
 
 at 132). The Court concluded that under those circumstances, it was “not * * * possible to comply with a demand for names and addresses of all persons treated for a knife wound without disclosing privileged information concerning diagnosis and treatment”
 
 (id.
 
 at 135).
 

 We perceive no difference of any actual substance between the subpoena quashed in
 
 Onondaga County
 
 and the ones challenged here. The records potentially responsive to the HHC subpoenas are precisely the same as those sought in
 
 Onondaga County.
 
 Though the District Attorney crafted the instant subpoenas with
 
 Onondaga County
 
 in mind by broadening their scope (to include most bleeding wounds rather than only knife wounds) and narrowing their reach (to include only wounds “plainly observable to a lay person”), the subpoenas still run afoul of
 
 Onondaga County.
 

 Here, much as in
 
 Onondaga County,
 
 the challenged subpoenas define the class of records sought by the “cause or potential cause” of injury. Thus, the subpoenas inevitably call for a medical determination as to
 
 causation
 
 “through the application of professional skill or knowledge”
 
 (Dillenbeck,
 
 73 NY2d at 284 n 4). It is precisely this intrusion into the physician-patient relationship that CPLR 4504 (a) seeks to prevent. The inherently medical nature of this judgment is not obviated by attempting to qualify it in terms of what a layperson might plainly observe.
 

 By merely reviewing hospital records after patients obtain emergency medical treatment, hospitals cannot reasonably determine whether particular injuries and their causes would have been obvious to a layperson. Medical records are
 
 *532
 
 not organized on the basis of what laypersons — as opposed to medical professionals — might discern. Even if a particular medical record does state the cause of injury, the record may not indicate reliably how the hospital ascertained the cause. Medical professionals may have learned the cause from the patient, or discovered it based on their medical expertise. Hospitals should not face contempt proceedings merely because they cannot distinguish the indistinguishable.
 

 This result is further justified by the policy objectives of the physician-patient privilege and the broad construction of CPLR 4504 (a) required to achieve them. Patients should not fear that merely by obtaining emergency medical care they may lose the confidentiality of their medical records and their physicians’ medical determinations. A contrary result would discourage critical emergency care, intrude on patients’ confidential medical relationships and undermine patients’ reasonable expectations of privacy.
 

 Finally, we note that none of the Legislature’s many statutory exceptions to the physician-patient privilege apply here. For example, notwithstanding CPLR 4504 (a), Public Health Law § 2101 (1) obliges physicians to disclose immediately any case of communicable disease
 
 (see Thomas v Morris,
 
 286 NY 266, 268-270 [1941]), and Social Services Law § 413 (1) requires all medical professionals to report actual or suspected cases of child abuse
 
 (see People v Trester,
 
 190 Misc 2d 46, 48 [2002]). CPLR 4504 (b) exempts from the privilege “information indicating that a patient who is under the age of sixteen years has been the victim of a crime.” Likewise, Penal Law § 265.26 requires hospitals and medical professionals to report to law enforcement authorities certain cases of serious burns
 
 (see Rea v Pardo,
 
 132 AD2d 442, 446 [1987]), and Penal Law § 265.25 obliges hospitals and medical professionals to report every case of a bullet wound, gunshot wound, powder burn and “every case of a wound
 
 which is likely to or may result in death
 
 and is actually or apparently inflicted by a knife, icepick or other sharp or pointed instrument” (emphasis added;
 
 see also Onondaga County,
 
 59 NY2d at 133, 135-136; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law §§ 265.25, 265.26, at 220, 222).
 

 Inasmuch as the Legislature enacted an exception to CPLR 4504 (a) directing the reporting of potentially life-threatening stab wounds
 
 (see
 
 Penal Law § 265.25), we reaffirm our conclusion that the Legislature intended CPLR 4504 (a) to protect
 
 *533
 
 against disclosure those medical records of patients whose stab wounds are less severe
 
 (see Onondaga County,
 
 59 NY2d at 136). Thus, because none of the Legislature’s other exceptions to the privilege apply, the records the District Attorney seeks remain privileged under CPLR 4504 (a), and the subpoenas seeking their disclosure must be quashed.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . CPLR 4504 (a) provides, in pertinent part: “Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing [or] licensed practical nursing * * * shall not be allowed to disclose any information which [s]he acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act
 
 *529
 
 in that capacity. The relationship of a physician and patient shall exist between a medical corporation * * * and the patients to whom [it] * * * render[s] professional medical services.”
 

 [2]
 

 . We recognize that courts may properly decline to enforce the physician-patient privilege where its invocation does not serve its policy objectives. Thus, for example, “a person or entity subject to proceedings for having committed crimes against an individual should not be permitted to assert the victim’s physician-patient privilege as a bar to production of relevant medical records or testimony”
 
 (Matter of Grand Jury Proceedings [Doe],
 
 56 NY2d at 352;
 
 see also People v Lay,
 
 254 App Div 372 [1938],
 
 affd
 
 279 NY 737 [1939]).