Robert Scott McKINLEY and Deborah McKinley, h/w, Plaintiffs Below, Appellants,

v.

Michele CASSON, Defendant Below, Appellee.

No. 465, 2012.

Supreme Court of Delaware.

Submitted: Aug. 28, 2013.

Decided: Oct. 31, 2013.

Matthew M. Bartkowski, Esquire (argued), Kimmel, Carter, Roman & Peltz, P.A., Newark, Delaware for Appellants.

Beth H. Christman, Esquire (argued), Rachel D. Allen, Esquire and Deborah L. Cuoco, Esquire, Casarino Christman Shalk Ransom and Doss, P.A., Wilmington, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider several evidentiary rulings in a personal injury action arising from a motor vehicle accident. Among other things, appellant[1] complains that the trial court erred in denying him access to appellee's medical records, and that the jury should not have been allowed to learn that he was not wearing a helmet at the time of the accident. We agree, and reverse and remand for a new trial.

### Factual and Procedural Background

On the evening of October 3, 2009, Robert McKinley and Michele Casson were involved in a motor vehicle accident near the base of the Summit Bridge in northern Delaware. Casson had been driving her SUV north on Route 896 and was preparing to cross the Summit Bridge when she

---

1. Both Robert Scott McKinley and Deborah McKinley are appellants. But, Deborah's claim is for loss of consortium and is not the subject of this appeal. Thus, we refer to appellants in the singular.

became anxious due to her fear of bridges and confined spaces. Construction work was being done on the bridge, and reflective orange barrels had been placed on the road to merge traffic from two northbound lanes into one. Casson slowed down and attempted to pull between the construction barrels to stop on the right-hand shoulder. Casson claims to have slowed down gradually, whereas McKinley testified that she came to a sudden stop. In either event, McKinley's motorcycle collided with the back of Casson's SUV. McKinley, who was not wearing a motorcycle helmet, sustained serious injuries.

At the scene of the accident, Delaware State Police Corporal Robert Downer, Jr. interviewed Casson. He asked her, among other questions, whether she was taking any medication at the time of the accident. She told him that she is afraid of bridges and takes medication for anxiety.[2] Casson also said that she had an anxiety attack and abruptly stopped at the foot of the bridge.[3] Downer issued Casson a citation for careless driving.[4]

In September 2010, McKinley filed this negligence suit against Casson, seeking damages for the injuries he sustained in the collision. Based on Casson's statements about her anxiety attack and medication, McKinley subpoenaed Casson's medical records from Dr. William Sommers, a physician who had prescribed Casson anti-anxiety medication. Casson moved for a protective order to compel the return of the records and to exclude evidence of Casson's medical history. The Superior Court granted her motion, find-

ing that the records were protected by the physician-patient privilege. Casson then moved for summary judgment, which the court denied.

In anticipation of trial, both parties filed motions *in limine*. McKinley moved to exclude references to his non-use of a helmet at the time of the accident. The court denied that motion, finding that evidence of non-use of a helmet was relevant to secondary assumption of the risk and mitigation of damages. Casson then moved to exclude all references to her prescriptions for, and use of, medication, arguing that McKinley had improperly obtained Casson's medical records, and that the evidence of Casson's medication lacked probative value. The court granted the motion.[5] In addition, Casson moved to allow Brandon Thomas, an EMT who had arrived at the accident scene shortly after the collision, to testify about the statements he had gathered from bystanders at the scene. The court granted that motion, finding that the bystanders' statements are admissible under the present sense impression exception to the rule against hearsay.

At trial, McKinley called Downer to testify about his investigation of the accident. On cross-examination, Casson's counsel asked Downer for his opinion as to the point of impact based on the damage to McKinley's motorcycle. McKinley objected to the question, arguing that it called for speculation and that Downer was not qualified as an accident reconstruction expert. The court overruled the objection.

2. Appellant's Appendix, A–24.

3. *Ibid.*

4. *Ibid.*

5. The court's basis for its exclusion of references to medication is unclear from the record. Casson argued for exclusion both on relevance grounds and based on her assertion that McKinley had obtained her medical records improperly. On appeal, the parties dispute only the relevance of the evidence of medication. Therefore, we do not address whether the records were improperly obtained.

At the end of trial, the Superior Court issued a jury instruction on secondary assumption of the risk and riding a motorcycle without a helmet. The instruction stated:

> Michele Casson has alleged that Robert McKinley voluntarily assumed a known risk when he drove a motorcycle without a helmet. Michele Casson must prove by a preponderance of the evidence that Robert Scott McKinley voluntarily assumed a known risk when he drove a motorcycle without a helmet.
>
> If you find that Robert Scott McKinley chose to take a risk and understood or should understand the danger associated with that risk, then you may take that into account when considering what damages were proximately caused by the accident.[6]

The jury found that Casson had not engaged in negligent conduct that proximately caused the accident. McKinley appealed various evidentiary rulings. Casson cross-appealed the trial court's denial of her motion for summary judgment.

**Discussion**

McKinley argues that the trial court erred in: 1) denying access to Casson's medical records; 2) granting Casson's motion to exclude all references to her medical condition; 3) allowing Thomas to testify about the bystanders' statements; 4) denying McKinley's motion to exclude all references to his failure to use a motorcycle helmet; 5) allowing Downer to give an expert accident reconstruction opinion; and 6) giving a jury instruction on assumption of the risk based on McKinley's failure to wear a helmet.

Generally, this Court reviews a trial court's evidentiary decisions for abuse of discretion.[7] If the decision turns on a question of law, however, our review is *de novo*.[8]

### I. Medical Records

After McKinley obtained Casson's medical records, the Superior Court granted Casson's motion for a protective order on two grounds. First, the court found that it would be unfair to invade Casson's privacy for the purpose of impeachment. Because Casson denied having told Downer that she takes medication for her fear of bridges, the jury was going to hear two versions of what Casson told Downer. The trial court ruled that McKinley could impeach her, without medical records, by focusing on those inconsistencies. Second, the trial court found that the medical records were irrelevant because, without an expert, McKinley could not use those records to establish that Casson had a panic attack and stopped suddenly.

Rule 503(b) of the Delaware Rules of Evidence (D.R.E.) establishes a physician-patient privilege that protects a patient from having to disclose medical records. But there are exceptions, including the following:

> There is no privilege under this rule for a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense. . . . [9]

The question is whether Casson relied on her anxiety as an element of her defense.

McKinley claimed that Casson negligently slammed on the brakes because she

---

**6.** Appellant's Appendix, A–275.

**7.** *Wright v. State*, 25 A.3d 747, 752 (Del.2011).

**8.** *Ibid.*

**9.** D.R.E. 503(d)(3).

feared bridges and had a panic attack. According to Downer's police report, Casson told him that: 1) she "suddenly stopped," 2) she has a "fear of bridges for which [she] takes prescription medication," and 3) she had "an anxiety attack." [10] Casson defended against that claim by downplaying her anxieties. At her deposition, she specifically denied ever being prescribed medication for her fear of bridges.[11] She explained that she takes medication for epilepsy, and that she takes valium as needed when flying because she is uncomfortable in confined spaces.[12]

■ Casson acknowledges that her anxiety was a central issue at trial. Yet she argues that she did not rely on her medical condition as an element of her defense. Generally, the mere "denial of an allegation cannot constitute a waiver of the physician-patient privilege." [13] But Casson did not merely deny McKinley's claim that she has a fear of bridges. She agreed that both bridges and confined spaces make her nervous. Casson also relied on her anxiety to explain why, at the time of the accident, she was looking for a place to pull off of the road. At the same time, Casson minimized the extent of her fears in an effort to refute Downer's report that she stopped suddenly. In other words, Casson was affirmatively relying on facts about her mental/emotional condition, for which she received medical treatment, as an element of her defense.

These circumstances support a finding that Casson waived the physician-patient privilege. Fairness requires this result as well. In addressing the attorney-client privilege, this Court noted:

> [W]aiver rests on a rationale of fairness, *i.e.*, disclosure of otherwise privileged information by the client under circumstances where it would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter. The courts of this State have refused to allow a party to make bare, factual allegations, the veracity of which are central to resolution of the parties' dispute, and then assert the ... privilege as a barrier to prevent a full understanding of the facts disclosed.[14]

Here, Casson made factual assertions about the extent of her fear of bridges— not simply to deny McKinley's claim, but also to explain her own conduct. By then invoking the physician-patient privilege, she prevented McKinley from gaining "a full understanding of the facts" of that condition. Casson should not have been allowed to downplay her condition to defend herself against McKinley's allegations and then prevent McKinley from gaining access to the only information that could shed light on the truth of her assertions.

Even with access to Casson's medical records, however, McKinley will need an expert if he decides to use those records at a new trial. As the trial court noted, the jury cannot be left to speculate what a certain dosage of a specific medication indicates about the severity of one's anxiety. Without the records, however, an expert would have no basis on which to form an opinion. In sum, the trial court abused its

10. Appellant's Appendix, A–24.

11. *Id.* at A–38.

12. *Id.* at A–154–55.

13. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo.1999); *see also Dillenbeck*

*v. Hess*, 73 N.Y.2d 278, 288, 539 N.Y.S.2d 707, 536 N.E.2d 1126 (1989).

14. *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 259 (Del.1995) (Citations omitted).

discretion in denying McKinley access to the limited medical information he requested.

## II. References to Medication

■ McKinley next argues that the Superior Court erred in granting Casson's motion *in limine* to exclude all references to her medication at trial. Had such references been permitted, McKinley would have asked Downer to testify that, at the accident scene, Casson told him she had been prescribed medication for her fear of bridges. Casson defends the Superior Court's ruling by arguing that Downer's proposed testimony is irrelevant and prejudicial. It may be prejudicial, but Casson's admission is relevant, and its probative value outweighs any prejudice.

■ Evidence is relevant if it tends to make the existence of a fact at issue more probable than not.[15] If Casson needs and/or takes medication to control her fear of driving over bridges, it means that her anxiety level is higher than that of an average person.[16] The higher Casson's anxiety level as she approached the bridge, the more likely it is that she panicked and slammed on the brakes rather than slowly pulling off to the side of the road. Thus, the evidence is relevant.

Evidence that is relevant may be excluded, nonetheless, "if its probative value is substantially outweighed by the danger of unfair prejudice."[17] Casson says that Downer's testimony would have confused the jury and caused it to speculate about the effect medication may have had on Casson's driving. But Casson could have addressed any such confusion through cross-examination, thereby mitigating any potential unfair prejudice. McKinley's claim turned on the jury's determination as to whether Casson stopped slowly or rapidly. By excluding evidence that Casson took medication for her fear of bridges, the trial court severely limited McKinley's ability to prove his claim, and abused its discretion.

## III. EMT's Testimony

■ McKinley next argues that the trial court should have excluded EMT Brandon Thomas's testimony about bystanders' statements made to him at the accident scene. Thomas testified that when he asked bystanders what had happened, they told him that McKinley's motorcycle had driven into the back of Casson's car, and that both vehicles were moving at a slow rate of speed (around ten miles per hour) at the time of impact.[18] McKinley contends that Thomas's testimony was inadmissible hearsay. The trial court admitted the testimony under the "present sense impression" exception to the hearsay rule.

■ Hearsay statements are generally inadmissible.[19] But, under D.R.E. 803(1), a court need not exclude "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."[20] A hearsay statement is admissible under this "present sense impression" exception if it meets the following requirements:

> [T]he declarant must have personally perceived the event described; the dec-

---

**15.** D.R.E. 401.

**16.** The jury does not need an expert to know that people generally do not need prescribed anti-anxiety medication in order to drive over bridges.

**17.** D.R.E. 403.

**18.** Appellant's Appendix, A–226.

**19.** D.R.E. 802.

**20.** D.R.E. 803(1).

laration must be an explanation or description of the event, rather than a narration; and the declaration and the event described must be contemporaneous. The statements, however, need not be precisely contemporaneous with the triggering event but must be in response to it and occur within a short time after the stimulus.[21]

■ The theory underlying the exception is that "spontaneous statements describing an event are trustworthy because the declarant has no time to fabricate the statements and because there is less concern that the statements reflect a defect in the declarant's memory."[22] Because such statements are deemed trustworthy enough to admit into evidence without an opportunity to cross-examine the declarant, "corroborating evidence may be required to determine whether the declarant made the statement at the time of the triggering event or whether the declarant actually perceived the triggering event."[23]

The problem here is that Thomas gathered information, and then wrote a report describing the substance of what he had been told by all the bystanders he interviewed. Thomas did not write down what any one bystander said. As a result, Thomas did not know whether the information he obtained came from a bystander who actually witnessed the accident, or a bystander who had heard about the accident from someone else. At his deposition, Thomas could not remember how many people he spoke to at the scene, nor could he recall any of their personal characteristics (age, race, gender, etc.). He stated only: "Well, one guy—well, from what I was informed by them, they had witnessed the incident."[24] This vague statement, on its own, is not enough to show that the declarants personally perceived the accident.[25]

■ No other hearsay exception applies to Thomas's testimony. The "medical diagnosis or treatment" exception[26] is inapplicable because, although Thomas did ask for information from bystanders for the purpose of treating McKinley's injuries, the bystanders did not give their statements for the purpose of receiving medical treatment themselves. The rationale behind the exception is that "a person seeking medical treatment is unlikely to lie to a doctor she wants to treat her, since it is in her best interest to tell the truth."[27] That rationale does not apply to these facts. Finally, the residual exception does not apply because, for reasons stated above, the hearsay statements do not have "circumstantial guarantees of trustworthiness."[28] Therefore, Thomas's testimony constituted hearsay not within any exception and should have been excluded.

## IV. References to Helmet Use

■ McKinley challenges the Superior Court's decision to allow evidence that he was not wearing a helmet when the acci-

21. *Warren v. State*, 774 A.2d 246, 251–52 (Del. 2001).

22. *Id.* at 252.

23. *Ibid.*

24. Appellant's Appendix, A–128.

25. *See Miller v. Keating*, 754 F.2d 507, 511 (3d Cir.1985) ("'[C]ircumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the 'guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule."). (Citation omitted).

26. D.R.E. 803(4).

27. *Capano v. State*, 781 A.2d 556, 624 (Del. 2001) (Citations omitted).

28. D.R.E. 807.

dent occurred. The Superior Court found that evidence of the failure to use a helmet is relevant to secondary assumption of the risk and mitigation of damages. We disagree.

■■■■ Secondary assumption of the risk "consists of voluntarily encountering a known unreasonable risk which is out of proportion to the advantage gained." [29] The doctrine is "totally subsumed within comparative negligence." [30] For comparative negligence to apply, the trier of fact must find that "*each* [party] failed to satisfy the requisite standard of care and was a proximate cause of the resultant injury." [31]

■■■ In Delaware, motorcyclists over 19 years of age may ride without wearing a helmet.[32] Thus, by statute, an adult does not violate a duty to exercise reasonable care by failing to wear a helmet. There being no statutory requirement to wear a helmet, the remaining question is whether there is a common law duty. We are aware of none, and we follow the numerous other jurisdictions that have declined to adopt a common law duty to wear a helmet.[33] Thus, the failure to wear a helmet is not relevant as a matter of comparative negligence.

Casson contends that our decision in *Spencer v. Wal–Mart Stores* [34] supports the Superior Court's finding that secondary assumption of the risk applies to these facts. In *Spencer*, the plaintiff was injured when she walked through a stream of water in the defendant's parking lot and purportedly slipped on some ice that had formed under the stream.[35] We held that the plaintiff had secondarily "assumed the risk of proceeding through the water" when she walked through the stream instead of using the sidewalk.[36] The plaintiff in *Spencer* was aware of the defendant's breach of duty and unreasonably chose to encounter the risk. Here, by contrast, McKinley made no "deliberate and unreasonable choice to encounter a risk created by another's breach of duty." [37] *Spencer* is inapposite.

Casson also argues the helmet evidence is admissible under Delaware's motorist safety statutes. Delaware's seatbelt laws expressly prohibit evidence of non-use of a seatbelt to prove contributory negligence.[38] No similar provision appears in the motorcycle statute.[39] Casson argues that this was an intentional omission by the General Assembly, and that, by negative inference,

**29.** *Koutoufaris v. Dick*, 604 A.2d 390, 397–98 (Del.1992).

**30.** *Id.* at 398.

**31.** *Moffitt v. Carroll*, 640 A.2d 169, 175 (Del. 1994).

**32.** 21 *Del. C.* § 4185(b). This section requires that all motorcyclists possess a helmet while riding. Only those aged 19 and under must wear a helmet while riding.

**33.** Our reasoning is in accord with the majority of state high court decisions, which have declined to create a common law duty to wear a motorcycle helmet where no statutory duty existed. *See, e.g., Kealoha v. County of Hawaii*, 74 Haw. 308, 844 P.2d 670, 676–77 (1993); *Meyer v. City of Des Moines*, 475 N.W.2d 181, 191 (Iowa 1991); *Hukill v. Di-*

*Gregorio*, 136 Ill.App.3d 1066, 92 Ill.Dec. 64, 484 N.E.2d 795, 796 (1985); *Dare v. Sobule*, 674 P.2d 960, 963 (Colo.1984); *Burgstahler v. Fox*, 290 Minn. 495, 186 N.W.2d 182, 183 (1971); *Rogers v. Frush*, 257 Md. 233, 262 A.2d 549, 552 (1970).

**34.** *Spencer v. Wal–Mart Stores East, LP*, 930 A.2d 881 (Del.2007).

**35.** *Id.* at 886.

**36.** *Ibid.*

**37.** *Koutoufaris*, 604 A.2d at 397.

**38.** 21 *Del. C.* § 4802.

**39.** 21 *Del. C.* § 4185.

non-use of a helmet is admissible to prove contributory negligence. Casson's analysis ignores the fact that the seatbelt statute contains a requirement that all car occupants wear seatbelts at all times, whereas no requirement for helmet use exists for adult motorcyclists. Without a statutory duty, there is no need to create a statutory rule of evidence concerning that duty.

 Finally, the helmet evidence cannot be used to argue that McKinley failed to mitigate damages. The duty to mitigate damages generally arises after a defendant has breached its duty to a plaintiff.[40] There was nothing McKinley could have done to mitigate damages after the accident.

### V. Jury Instruction on Assumption of the Risk

In light of our holding that no evidence should have been admitted regarding McKinley's non-use of a helmet, it follows that no jury instruction should have been given on assumption of the risk and/or riding without a helmet. Thus, we decline to address whether the instruction was substantively deficient.

### VI. Allowance of Downer's Opinion Testimony

 McKinley argues that the Superior Court erred by allowing Downer to speculate about McKinley's actions in the moments before his motorcycle struck Casson's car. Downer testified as follows:

Q: ... It looks like he struck the rear of her vehicle, given the damage to the right fender on his bike. Is that correct?

A: ... As for what he was doing, I don't know. From the damage, it looks like it's possible that he could have taken an emergency maneuver to the left to get around, I don't know.[41]

McKinley says that this testimony amounts to an inadmissible expert opinion, and that the Superior Court erred in allowing it. We disagree.

 D.R.E. 701 prohibits non-expert witnesses from giving technical testimony requiring specialized knowledge. The rule states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.[42]

A police officer violates Rule 701 when, without being qualified as an expert in accident reconstruction, he testifies as to the primary cause of an accident.[43] But Downer never testified about the cause of the accident. He was asked to give a lay opinion, based on the damage to the right side of McKinley's motorcycle, that McKinley was moving to the left at the time of impact. Downer's response barely qualifies as any type of opinion, since he began and ended his statement with "I don't know." To the extent that his state-

---

**40.** *See Piche v. Nugent,* 436 F.Supp.2d 193, 204 (" 'A plaintiff's duty to mitigate damages arises *after* he or she has suffered an injury or loss....' ") (D.Me.2006) (quoting *Searles v. Fleetwood Homes of Pa., Inc.,* 878 A.2d 509, 521 (Me.2005) (emphasis added)).

**41.** Appellant's Appendix at A–212.

**42.** D.R.E. 701.

**43.** *Lagola v. Thomas,* 867 A.2d 891, 896 (Del. 2005); *Alexander v. Cahill,* 829 A.2d 117, 121–22 (Del.2003).

ment had any substantive value, it was a lay opinion within the meaning of Rule 701. The trial court correctly allowed the testimony.

### VII. Denial of Summary Judgment

Casson argues on cross-appeal that the Superior Court erred in denying summary judgment. She contends that, even if she slammed on the brakes, McKinley had a duty to maintain a safe distance behind her; reduce his speed in a construction zone; and drive at a speed that would have allowed him to stop without colliding with the vehicle in front of him. The fact that he hit her car establishes that he violated those duties. Casson concludes: "[g]iven the number of duties attributable to Plaintiff, as opposed to those incumbent upon Defendant, summary judgment should have been granted."[44]

■■■ This case turns on a factual dispute as to whether Casson drove her vehicle in a negligent manner, thereby causing the accident. McKinley should have been traveling at a speed and distance behind Casson that would have avoided the accident. But that fact does not end the matter. Casson's operation of her vehicle may have been so unreasonable under the circumstances that she is more than 50% responsible for the collision. Viewing the evidence in the light most favorable to McKinley, he was driving properly; Casson knew she had a fear of bridges; she took medication for that fear; and she slammed on the brakes because she had a panic attack. A jury could find that Casson failed to exercise reasonable care when she operated her vehicle in a dangerous manner in an effort to avoid going over the bridge. The trial court correctly denied Casson's motion for summary judgment.

**44.** Appellee's Answering Brief, p. 39.

### Conclusion

Base on the foregoing, we conclude that the trial court's evidentiary errors deprived McKinley of a fair trial. Accordingly, we reverse and remand for a new trial. Jurisdiction is not retained.