OPINION OF THE COURT
Rolando T. Acosta, J.
*731 Background.
On November 19, 2002, plaintiff (Sue Rogers) underwent a craniotomy at the NYU Hospitals Center and on November 30, 2002 was transferred to NYU’s Rusk Institute of Rehabilitation Medicine for occupational, speech and physical therapy. This action for negligence arose from a neck injury that plaintiff allegedly sustained while at the Rusk Institute.
At issue in this motion is whether plaintiff is entitled to discover the name of her roommate at the Rusk Institute on the date of the accident. Citing CPLR 4504 (a) and Public Health Law § 2803-c (3) (f), defendant argues that divulging that information would violate the privacy concerns of the roommate who is not a patient to this lawsuit. Noting the broad range of services offered at the Rusk Institute, plaintiff argues that the roommate’s privacy concerns would not be violated because disclosure of her name would not divulge any medical information or treatment-related information.
Analysis
CPLR 4504 (a)[1] “shields a ‘patient’s medical information (diagnosis, prognosis and propensities) from disclosure.’ ” (Gunn v Sound Shore Med. Ctr. of Westchester, 5 AD3d 435, 436 [2d Dept 2004], quoting Matter of Ashford v Brunswick Psychiatric Ctr., 90 AD2d 848 [2d Dept 1982]; see also Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525 [2002] [“(t)hough in derogation of the common law, the physician-patient privilege is to be given a ‘broad and liberal construction to carry out its policy’ (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 134 [1983]; Matter of City Council of City of N.Y. v Goldwater, 284 NY 296, 300 [1940])”].)[2]
“The physician-patient privilege^ however,] gener *732 ally does not extend to information obtained outside the realms of medical diagnosis and treatment. Indeed, because the policies underlying the physician-patient privilege implicate confidential patient relationships with medical professionals as medical professionals, we have generally limited the privilege to information acquired by the medical professional ‘through the application of professional skill or knowledge’ (Dillenbeck [v Hess, 73 NY2d 278, 284 n 4 (1989]). Accordingly, notwithstanding CPLR 4504 (a), medical professionals have been authorized to disclose [inter alia] . . . the names and addresses of a medical professional’s patients (see In re Albert Lindley Lee Mem. Hosp., 115 F Supp 643 [ND NY 1953], affd 209 F2d 122 [1953] [2d Cir], cert denied sub nom. Cincotta v United States, 347 US 960 [1954]).” (98 NY2d at 530.)
Thus, “[a]s a general rule, ‘[disclosure of the identity of a nonparty patient who may have been a witness to an alleged act of negligence or malpractice does not violate the privilege of confidentiality of treatment accorded those individuals under CPLR 4504 (subd [a]).’ ” (5 AD3d at 436, quoting Hirsch v Catholic Med. Ctr. of Brooklyn & Queens, 91 AD2d 1033, 1034 [2d Dept 1983].) The nonparty patient’s CPLR 4504 rights would be violated only “if the revelation of a patient’s location in a hospital would, by simple deduction, also reveal that patient’s medical status.” (Marte v Brooklyn Hosp. Ctr., 9 AD3d 41, 47 [2d Dept 2004], citing Gunn, 5 AD3d 435, supra [2004].) In that situation, disclosure would also “run afoul of . . . the intent behind HIPAA [federal Health Insurance Portability and Accountability Act of 1996 (42 USC § 1320d et seq.)].” (9 AD3d at 47.)
Thus, in Gunn, disclosure of the nonparty patient’s name was not permitted because, as a patient of the Cardiac Rehabilitation Center, revealing the patient’s name would also reveal the *733 patient’s medical status. (5 AD3d at 437.) And, although the issue of whether HIPAA also prohibited disclosure was not raised by the parties, the Court noted that:
“The modern-day legislative trend is to protect a medical patient’s privacy [citing HIPAA] . . . Under HIPAA, ‘protected health information’ is broadly defined as any individually-identifiable health information which was created by, among others, a health care provider, and which relates to, inter alia, the past, present, or future physical or mental health or condition of an individual (42 USC § 1320d [6]; 45 CFR 160.103).” (Id. [emphasis added].)
Disclosure, however, was permitted in Hirsch v Catholic Med. Ctr. (91 AD2d 1033, 1034 [2d Dept 1983]) because disclosure of the identity of the nonparty patient “who may have been a witness to an alleged act of negligence or malpractice [did] not violate the privilege of confidentiality of treatment accorded those individuals under CPLR 4504 (subd [a]) and section 2803-c (subd 3, par f) of the Public Health Law[3] (see Vanadio v Good Samaritan Hosp., 85 AD2d 662; King v O’Connor, 103 Misc 2d 607),” presumably because the patient’s medical treatment or condition could not be ascertained simply by revealing his/her name. (See also, Davis v Solondz, 122 AD2d 401, 401 [3d Dept 1986] [“since . . . demand requested only the captions of previous suits and not specifics of the treatment afforded any of defendant’s patients, disclosure of such information does not violate the privilege of confidentiality of treatment accorded such patients under CPLR 4504 (a)”]; Duzon v State of New York, 155 Misc 2d 86, 88 [Ct Cl 1992] [unlike Hirsch and related cases and Public Health Law § 2803-c (3) (f), Mental Hygiene Law § 33.13 (c) prohibits even the identification of mental health patients to insulate them from humiliation and embarrassment].) In short, a nonparty witness’s name may be disclosed if revealing the patient’s name does not also reveal or lead to a revelation about his/her medical condition or treatment.
Applying the above-stated principles to the facts of this case, disclosing plaintiff’s roommate’s name on the date of the incident would not run afoul the patient’s privacy concerns. Unlike the patient in Gunn, who was in a cardiology rehabilitation *734 center and revealing her name would also reveal that she was receiving treatment for a cardiac condition, revealing the witness’s name here will have no such effect. The witness was a patient at the Rusk Institute, a general rehabilitation center. Indeed, Rusk Institute’s Web site describes a broad range of services, including, but not limited to, aquatic therapy, pediatric rehabilitation, physical therapy, cardiac rehabilitation, speech-language pathology, stroke rehabilitation, vision therapy, and occupational therapy. It would be extremely difficult if not impossible to infer the patient’s medical condition or treatment simply by knowing that she was a patient at Rusk Institute.
Without citing any legal authority, defendant argues that HIPAA would nonetheless preclude disclosure. This argument has no merit inasmuch as revealing the patient’s name under the circumstances stated above would not in anyway violate 42 USC § 1320d-6. Subsection (a) of that statute prohibits any person from
“(1) us[ing] or causing] to be used a unique health identifier[4];
“(2) obtain [ing] individually identifiable health information relating to an individual; or
“(3) disclos[ing] individually identifiable health information[5] to another person.”
Furthermore, in 2002, six years after HIPAA was enacted, the New York State Court of Appeals acknowledged the disclosure principles stated above. (Matter of Grand Jury Investigation in N.Y. County, 98 NY2d, supra at 530-531.) Nor can defendant argue that New York State is insensitive to HIPAA’s privacy concerns given that New York State has historically been a pioneer in physician-patient privilege. (Id. at 529 [“New York was the first state to enact a physician-patient privilege statute *735 (see 2 Rev Stat of NY, part III, ch VII, tit III, § 73 [1st ed 1829]; see also Dillenbeck v Hess, 73 NY2d 278, 284 [1989]; Fisch, New York Evidence § 541, at 356 [2d ed 1977])”].)
Accordingly, defendant is ordered to disclose plaintiffs roommate’s name.

. CPLR 4504 (a) states in relevant part: “Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity . . . .”

. In Matter of Grand Jury Investigation in N.Y. County (98 NY2d, supra at 529-530), the Court, in reviewing the history of the physician-patient privilege, stated: “CPLR 4504 (a), serves three core policy objectives . . . (see generally Prince, Richardson on Evidence §§ 5-301, 5-302, at 246-249 [Farrell 11th ed]). First, the physician-patient privilege seeks to maximize unfettered patient communication with medical professionals, so that any potential embarrassment arising from public disclosure will not ‘deter people from seeking medical help and securing adequate diagnosis and treatment’ (Dillenbeck at 285, quoting Williams v Roosevelt Hosp., 66 NY2d 391, 395 [1985]; see also *732 Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352 [1982]). Second, the privilege encourages medical professionals to be candid in recording confidential information in patient medical records, and thereby averts a choice ‘between their legal duty to testify and their professional obligation to honor their patients’ confidences’ (Dillenbeck at 285, citing Fisch § 541; see also Revisers’ Reports and Notes, 3 Rev Stat of NY, at 737 [2d ed 1836]). Third, the privilege protects patients’ reasonable privacy expectations against disclosure of sensitive personal information (see Martin, Capra & Rossi, New York Evidence Handbook § 5.3.1, at 367 [1997]; Developments in the Law— Privileged Communications, Medical and Counseling Privileges, 98 Harv L Rev 1530, 1544-1548 [1985]).”

. Public Health Law § 2803-c (3) (f) states every patient shall have the right to have privacy in treatment and in caring for personal needs, confidentiality in the treatment of personal and medical records, and in storing personal possessions.

. See 42 USC § 1320d-2 (b).

. 42 USC § 1320d (6) defines individually identifiable health information as:
“[A]ny information, including demographic information collected from an individual, that—
“(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
“(B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—
“(i) identifies the individual; or
“(ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.”