# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

RACHEAL CONAWAY                    )
and TIMOTHY CONAWAY,               )
                                   )
    Plaintiffs,            )
                                   )
        v.          )      C.A. No. CPU4-16-002487
                                   )
NEW HOPE TILE, LLC and             )      SPEED DOCKET
MICHAEL CZERWINSKI T/A NEW         )
HOPE TILE, LLC & CONSTRUCTION,     )
                                   )
    Defendants.            )


Submitted: March 8, 2017
Decided: May 31, 2017

Douglas A. Shachtman, Esquire           Kevin S. Mann, Esquire
The Shachtman Law Firm              Cross & Simon, LLC
1200 Pennsylvania Avenue, Ste. 302     1105 N. Market Street, Ste. 901
Wilmington, DE 19806               Wilmington, DE 19801
  *Attorney for Plaintiffs*            *Attorney for Defendants*

# DECISION AFTER TRIAL


**SMALLS, C.J.**

The matter before the Court involves an alleged breach of contract arising from a general contractor's agreement for renovations on a house. Racheal Conaway ("Racheal") [1] and Timothy Conaway ("Timothy") (collectively, "Plaintiffs") entered into a contract with New Hope Tile, LLC ("New Hope") and Michael Czerwinski, trading as New Hope Tile LLC & Construction, ("Czerwinski") (collectively, "Defendants") to renovate Plaintiffs' master bathroom and powder room. Plaintiffs allege Defendants failed to complete the work in accordance with the terms of the contract and in a workmanlike manner. Additionally, Plaintiffs allege the electrical and plumbing work was not performed by licensed personnel and Defendants did not have such licenses to perform the work.

On March 8, 2017, the Court held trial on the matter. The evidence consisted of testimony from Henry White ("White"),[2] Racheal, and Czerwinski. The parties also submitted documentary evidence for the Court to consider. At the conclusion of trial, the Court reserved decision. This is the Court's decision after trial.

## FACTS[3]

This dispute involves a contract for renovations to a private residence located at 2301 Capital Trial, Newark, DE 19702. Timothy is the recorded owner of the property, but does not live there. Timothy's daughter, Racheal, resides at the property along with Timothy's elderly mother, Elizabeth. Czerwinski is a general contractor, who has been employed in the residential construction business since 1986. Czerwinski created New Hope Tile in 1996,

---

[1] The Court does not intend any disrespect by the use of first names. However, because two of the parties share the same last name, it is necessary to use first names so as to avoid confusion.

[2] White is the owner of Henry W. White, Inc., a Delaware general contracting company. White has been a licensed general contractor in the State of Delaware since 1984. The Court finds White to be a credible expert witness with regard to the professional standards of a general contractor.

[3] The Court has found the facts of this matter by a preponderance of the evidence, based upon all of the evidence introduced at trial and the reasonable inferences therefrom.

and formed New Hope Tile, LLC in 2008. New Hope Tile, LLC has two employees, including Czerwinski who is the owner and chief operating officer.

Racheal, with the approval of Timothy, sought to renovate the property's master bathroom and powder room. The master bathroom is used by Racheal, while Elizabeth uses the powder room. In February 2016, Racheal contacted New Hope to request a bid for the proposed renovations. Czerwinski meet with Racheal at the property, and the parties entered into a written contract where New Hope would perform the renovations for $4,925.00.[4] The agreement included an eighteen month warranty on installation.[5] The work to be performed under the agreement, as set forth in the invoice, is as follows:

> "[R]emove and replace all walls in [powder room]; haul away to dump; supply new drywall and finish; homeowner will paint; also install [vinyl] floor supplied by you;
>
> Install new toilet, new vanity, and new light; also new plumbing for sink faucet all supplied by you for [powder room];
>
> [R]emove all walls and ceiling in upstairs [master] bathroom, walls have tile; also remove mud floor and tile; haul all to dump;
>
> [Supply] and [install] new drywall on walls and ceiling finish for paint; homeowner will paint;
>
> Frame up new about 48 inch shower and tile homeowner to supply tile; we supply all building materials;
>
> Center drain and replace diverter (water control supplied by you); also hook up sink and toilet supplied by you;
>
> [M]ake shower pan on floor; we supply everything except tile;
>
> [F]rame up shelves on other side of shower we supply everything; and

---

[4] *See* Plaintiffs' Exhibit 2.
[5] *See id.*

3

Install of new [vinyl] floor, new vanity, (you supply) and new door (we supply door) at entrance"[6]

During the course of the renovations, New Hope billed Racheal three additional amounts for further repairs to the master bathroom and powder room. These additional repairs included: (1) replacing the door to the powder room; (2) removing the drop ceiling and drywall in the powder room; (3) installing insulation behind the walls in the powder room; (4) removing mold in the master bathroom; (5) removing rotting floor in the master bathroom; and (6) installing a ceiling fan and shower seat in the master bathroom.[7] New Hope charged Racheal $3,260.00 for these additional repairs, for which she paid in full. All of the renovations were performed by Czerwinski, except for repairs to the master bathroom's ground-fault interrupter which were performed by a licensed electrician.

Pursuant to the terms of the contract, New Hope was to finish the bathroom walls for Plaintiffs to paint. Racheal testified that when Plaintiffs went to paint the bathrooms, they inspected Defendants' work and noticed several defects. These defects included a "hole under the sink, hole in floor, [the sink leaked], spackling was incomplete and not sanded, molding around the window [and] caulking not [completed] . . . shelves were never sanded so that they could be painted, cuts in drywall that [were] never spackled, and the [powder room's] heat register [did] not fit."[8] Also, Defendants did not install the ceiling fan in the master bathroom.[9] On March 21, 2016, Racheal summarized her complaints in an email and requested Czerwinski address the outstanding issues.[10]

---

[6] Plaintiffs' Exhibit 3.
[7] *See* Plaintiffs' Exhibits 4-6.
[8] Plaintiffs Exhibit 8.
[9] *See id.*
[10] *See id.*

On March 22, 2016, Czerwinski, on behalf of New Hope, emailed Racheal stating that New Hope was sorry that Plaintiffs were unhappy with the renovations.[11] Czerwinski explained that when New Hope contracted to get the walls ready for paint they "mean put two coats of spackle that's it. No sanding [or] touch up no anything, those are part of the painting [procedure] I made that clear."[12] Nevertheless, Czerwinski stated that Defendants were willing to patch the hole under the sink and repair any leaks.[13]

Czerwinski subsequently met with Plaintiffs at the property to address their complaints. Racheal invited her cousin to attend the meeting because of his prior experience with home renovations. Racheal's cousin identified several issues with Defendants' renovations that were either completed improperly or were incomplete. Racheal testified that Czerwinski became defensive and argumentative when she questioned his work. Ultimately, Czerwinski stated he would return in May to install the ceiling fan for the master bathroom and make some minor repairs; however, Defendants never returned to install the ceiling fan or make the promised repairs.

On May 15, 2016, Racheal testified that she emailed Czerwinski stating that she was unhappy with the work done by Defendants.[14] In addition to her original grievances, Racheal indicated Defendants failed to remove the old ceiling in the master bathroom, the master bathroom shower tiles were installed unevenly, and the door casing to the powder room was never completed.[15] Furthermore, Racheal indicated in the email that she would pursue legal action, unless she was refunded $6,229.00. The next day, Defendants

---

[11] *See* Plaintiffs' Exhibit 9.
[12] *See id.*
[13] *See id.*
[14] *See* Plaintiffs' Exhibit 10.
[15] *See id.*

responded stating they completed all of the renovations in accordance with the terms of the contract. Defendants further urged Racheal to "drop this ridiculous claim," or they would file a counter-claim for work New Hope performed for free.[16]

On June 26, 2016, Racheal hired Henry W. White, Inc. ("HWI") to inspect work done by Defendants in the master bathroom and powder room. Following HWI's inspection of the powder room, it reported that: (1) New Hope did not remove the old base trim, but instead butted a new drywall to it; (2) New Hope failed to install insulation behind the old base trim, because it was never removed; (3) New Hope failed to have the walls finished for painting; (4) New Hope never finished installing the door casing; and (5) New Hope reinstalled Plaintiffs' old light fixture instead of a new one.

HWI's inspection of the master bathroom revealed and reported that: (1) New Hope failed to remove the old mud floor and ceiling; (2) New Hope failed to install the shower drain in the center, and instead installed the shower drain on a slope, towards the end of the shower; (3) New Hope failed to install the shelves; (4) New Hope failed to remove all of the rotted floor around the toilet; (5) New Hope damaged the toilet flange when trying to remove the rotted floor around the toilet; (6) New Hope incorrectly wired the ground-fault interrupter;[17] (7) New Hope's installation of the shower door was out of plumb; and (8) New Hope never installed a shower seat and ceiling fan. Additionally, HWI stated New Hope cracked a section of galvanized pipe when Czerwinski installed the drain to the master bathroom shower, which caused water to leak onto Plaintiffs' dining room ceiling.

---

[16] *See id.*

[17] Although the repairs to the ground-fault interrupter were done by an electrician, White attributed them to New Hope.

Furthermore, upon review of New Hope's invoices, HWI stated New Hope charged Racheal for additional repairs that were already provided for under the terms of the original invoice, including replacing the drain in the master bathroom and purchasing a dumpster for trash removal.

HWI estimated it would cost $1,145.00 to repair Defendants' renovations to the powder room, and $8,828.71 to repair the master bathroom. Additionally, HWI determined it would cost $500.00 to repair the water damage to the master bathroom. Based upon this report, Racheal hired HWI who subsequently completed the repairs to the property.

**PARTIES' CONTENTIONS**

It is the Plaintiffs' contentions that Defendants did not complete the renovations in accordance with the terms of their contract, and the work that was completed was done in a non-workmanlike manner. Plaintiffs also contend some of the proposed renovations included electrical and plumbing work that required licensed craftsmen, and Defendants were not licensed to make such repairs. Accordingly, Plaintiffs bring causes of action for (1) breach of contract; (2) breach of warranty; (3) consumer fraud; (4) deceptive practices in consumer contracts; (5) negligence; and (6) common law fraud.

Defendants contend they completed the renovations in accordance with the terms of the contract and raise a number of affirmative defenses. Defendants also argue the substance of this litigation involves an alleged breach of contract, and Plaintiffs cannot bring an action sounding in tort for claims under contract. Furthermore, because Plaintiffs are suing to enforce rights under the Racheal-New Hope Contract, Defendants argue Timothy lacks standing because he is not a party to the original contract. Defendants also contend

7

Czerwinski is not a proper party to this litigation. Defendants maintain New Hope Tile, LLC & Construction is a separate and distinct entity, i.e. New Hope. Defendants contend at all relevant times Czerwinski acted in his official capacity as owner and chief operating officer of New Hope. Furthermore, Defendants maintain Czerwinski never intended to be personally liable for work performed on behalf of New Hope. For these reasons, Defendants argue the Court must dismiss Czerwinski as a party to this litigation and enter judgment if it finds liability only as to New Hope.

## DISCUSSION

During the trial, the Court sat as the sole trier of fact. Therefore, it is the Court's responsibility to assess the credibility of the testifying witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[18] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[19]

In civil cases, the claimant bears the burden to prove each and every element of its claim by a preponderance of the evidence.[20] The party on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists.[21]

As a preliminary matter, the Court will first address whether Timothy and Czerwinski are proper parties to the proceedings. Generally, a stranger to a contract cannot enforce

---

[18] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[19] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[20] *See Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del. 1967).
[21] *See id.*

8

rights under the contract.[22]   However, a non-party may enforce the contract as a third party beneficiary if the following is established: (1) the contracting parties intended to benefit the third party; (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation; and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract.[23]   If there is no intent by the contracting parties to confer a benefit, a third party who receives such a benefit under the contract is merely an incidental beneficiary with no enforceable rights.[24]

In order to determine whether a non-party can enforce a contract as a third party beneficiary, the Court must look to the language of the contract.[25]   The relevant contract in this matter does not mention Timothy, either by name or general reference.   Although a third party beneficiary need not be specifically named or referenced in a contract, the contracting parties must intend to confer a benefit to a third party, and that intention must be a material part of the contract's purpose.[26]   Upon review of the relevant contract, I find that Racheal and New Hope did not intend to confer a benefit to Timothy when they entered into a contract for renovations to the property.   Timothy is merely an incidental beneficiary, who benefits from the Racheal-New Hope Contract by having renovations done to a property he owns.[27]   As such, Timothy does not acquire any rights to enforce the

---

[22] *See St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *2 (Del. Super. Aug. 1, 2005).
[23] *See Ellis v. Tri State Realty Assocs. LP*, 2015 WL 993438, at *6 (Del. Super. Feb. 27, 2015).
[24] *See id.*
[25] *See Bromwich v. Hanby*, 2010 WL 8250796, at *2 (Del. Super. July 1, 2010).
[26] *See Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. 1990).
[27] By contrast, Elizabeth would be an intended third party beneficiary to the Racheal-New Hope Contract.  A material consideration in Racheal and New Hope entering into the contract was to confer a benefit onto Elizabeth, i.e. a newly renovated powder room.

9

contract. Therefore, Timothy cannot bring a cause of action based upon the Racheal-New Hope Contract, and as such his claims must and are dismissed.

Furthermore, Timothy cannot bring a cause of action based upon negligence. In order for Timothy to prevail on a claim of negligence, he would have to satisfy the elements of negligence: duty, breach, causation, and harm.[28] In this case, there are no facts which would demonstrate how Timothy suffered any harm caused by Defendants. Any damage to the property caused by Defendants' renovations was ultimately repaired by HWI, at no cost to Timothy. Timothy has failed to show continued damages as a result of Defendants' conduct; therefore, Timothy cannot succeed on a claim of negligence. Additionally, in order to prevail on a claim based upon common law fraud, Timothy would have to establish the fact that Defendants made a misrepresentation of material fact to Timothy.[29] However, the record reflects the only communications between the parties regarding the renovations occurred between Defendants and Racheal. There is no evidence that Defendants made any statements, yet alone false statements, to Timothy; therefore, I find no basis for a claim based upon common law fraud. Consequently, because Timothy cannot bring a valid claim based upon tort or contract, he is not a proper party to this litigation.

With regard to Czerwinski, a review of the documents indicates he signed the initial contract as "New Hope Tile LLC & Construction." In these documents, Czerwinski is referred to in his official capacity as the owner of New Hope, a Delaware limited liability company. Under Delaware's Limited Liability Company Act,

---

[28] *See Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).
[29] *See CHS Theaters, LLC v. Nederlander of San Francisco Associates,* 2015 WL 1839684, at *21 (Del. Ch. Apr. 21, 2015).

10

"the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member."[30]

An exception to the steadfast rule exists when a member of a limited liability company signs a contract on his own behalf, rather than for the company.[31]

Turning to the matter before the Court, the facts support the conclusion that Czerwinski was acting in his official capacity as owner and chief operating officer of New Hope when he signed the contract and performed the renovations to Plaintiffs' property. Plaintiffs have failed to provide the Court with sufficient evidence to suggest Czerwinski can be held personally liable for actions taken on behalf of New Hope. Therefore, because Czerwinski was acting as an agent for a disclosed principal— i.e. New Hope— only the principal may be held liable for a breach of contract.[32] Accordingly, all claims brought against Czerwinski are dismissed.[33]

### I. Breach of Contract

In order for Racheal to prevail on a claim for breach of contract, she must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed by the contract; and (3) the plaintiff suffered

---

[30] 6 *Del. C.* § 18-303.

[31] *See Thomas v. Hobbs*, 2005 WL 1653947, at *2 (Del. Super. Apr. 27, 2005).

[32] *See Harris v. Dependable Used Cars, Inc.*, 1997 WL 358302, at *1 (Del. Super. Mar. 20, 1997).

[33] Even assuming arguendo that Plaintiffs presented adequate evidence to warrant an inquiry as to whether Czerwinski can be held personally liable under an alter ego or "corporate veil piercing" theory, in Delaware such action is not within the jurisdiction of this Court. *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *see also Hobbs*, 2005 WL 1653947, at *2.

damages as a result of the breach.[34] Delaware adheres to the objective theory of contracts, meaning a contract should be viewed in the light of an objective and reasonable third party.[35] There are two written agreements; therefore, it is undisputed that a contract existed between Racheal and New Hope.

On consideration of the testimony and the documents submitted at trial, I find that New Hope breached its obligations under the Racheal-New Hope Contract. New Hope's invoices listed work it was to perform in connection with the renovations. Racheal introduced as part of her case-in-chief photographs depicting New Hope's completed work. These photographs reveal several instances where New Hope did not perform its obligations under the contract. For example, New Hope failed to remove the ceiling and mud floor in the master bathroom, failed to install a shower seat and ceiling fan in the master bathroom, and failed to remove the old base trim in the powder room.

Racheal's witness, White, also testified regarding the professional standards of a general contractor. White testified that he reviewed New Hope's invoices and inspected the work performed, and found several instances where New Hope's renovations were not completed in accordance with the terms of the parties' contract. For instance, New Hope failed to have the walls finish for paint, partially installed a door casing, and reinstalled Plaintiffs' old light fixture instead of a new one. White also testified that New Hope did not install the shower drain in the master bathroom according to the contract; failed to remove all the rotten wood in the master bathroom; and incorrectly wired the master bathroom's

---

[34] *See Gregory v. Frazer*, 2010 WL 4262030, *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.,* 840 A.2d 606, 612 (Del. 2003).
[35] *See Brace Indus. Contracting, Inc. v. Peterson Enters., Inc.*, 2016 WL 6426398, at *6 (Del. Ch. Oct. 31, 2016).

ground-fault interrupter. This testimony in conjunction with the photographs of the work proved by the preponderance that the work was incomplete, substandard, and, in part, not provided, and as such New Hope breached its obligations under the contract.

Furthermore, the Racheal-New Hope Contract contained a provision where New Hope provided an eighteen month guarantee on installation. New Hope completed the renovations in mid-March 2016. As discussed *supra,* there were several defects in New Hope's work. On March 21, 2016, Racheal notified New Hope of the defects, and requested New Hope make the necessary repairs. To date, New Hope has not made any attempt to correct the defects in its renovations. Therefore, the evidence proves by the preponderance that New Hope breached its contractual warranty on installation.

The Court heard testimony from Racheal and White that the total cost for HWI to correct New Hope's defective and incomplete work was $10,473.71.[36] However, HWI's repairs included painting the powder room and master bathroom, which New Hope had no obligation under the contract. White testified that he charged Racheal approximately $150.00 to paint the powder room and $250.00 to paint the master bathroom. Because New Hope never had an obligation to paint these rooms, Racheal cannot recover these sums. Therefore, as a result of New Hope's breach of contract, I award damages of $10,073.71.

## II. Breach of the Implied Warranty of Good Quality and Workmanship

Delaware law recognizes an implied warranty of good quality and workmanship.[37] This Court has previously held that this implied warranty attaches to contracts for

---

[36] This represents $1,145.00 for the powder room, $8,828.71 for the master bathroom, and $500.00 for the additional repairs to the master bathroom.
[37] *See Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 622 (Del. Super. 1908).

renovations to a home.[38]  Under the implied warranty of good quality and workmanship, the law presumes a person who holds himself out as a competent contractor to perform labor, will possess the requisite skill to perform such labor.[39]  In essence, the law requires contractors to perform their labor in a skillful and workmanlike manner.[40]  A contractor will be in breach of this implied warranty if he fails to "display[] the degree of skill or knowledge normally possessed by members of [his] profession or trade."[41]  However, this implied warranty only applies to latent defects, and not to those that are obvious or discoverable by a reasonable inspection.[42]  Moreover, a "good faith attempt to perform a contract, even if the attempted performance does not precisely meet the contractual requirement is considered complete if the substantial purpose of the contract is accomplished."[43]

Turning to the matter *sub judice*, I find that the evidence proved by the preponderance thereof that New Hope breached the implied warranty of good quality and workmanship. During the course of the renovations, Czerwinski represented he was a competent contractor to perform the proposed renovations.  Plaintiffs' expert witness, White, testified to the professional standards of a general contractor in Delaware.  As discussed *supra*, there were several visible defects in New Hope's renovations.  However, White testified that there were also several latent defects in New Hope's work that were not discoverable until HWI began repairing New Hope's work.  These latent defects included an improperly wired

---

[38] *See Afilipoaei v. Fruehauf*, 2013 WL 5970491, at *1(Del. Com. Pl. Oct. 31, 2013); *Marcano v. Dendy*, 2007 WL 1493792, at *1 (Del. Com. Pl. May 22, 2007).
[39] *See Casale Constr., LLC v. Best Stucco LLC*, 2014 WL 1316150, at *4 (Del. Super. Mar. 28, 2014) (quoting *Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 622 (Del. Super. 1908).
[40] *See id.*
[41] *Afilipoaei,* 2013 WL 5970491, at *2.
[42] *See Duncan v. JBS Const., LLC*, 2016 WL 1298280, at *3 (Del. Com. Pl. Mar. 31, 2016).
[43] *Nelson v. W. Hull & Family Home Improvements*, 2007 WL 1207173, at *5 (Del. Com. Pl. Mar. 9, 2007) (quoting *Del. Civ. Pattern Jury Instructions* § 19.18 (1998)).

14

ground-fault interrupter, a damaged toilet flange, and the partial removal of rotting floor in the master bathroom. White further testified that when New Hope installed the shower drain in the master bathroom, New Hope cracked a section of galvanized pipe, which caused water damage to Plaintiffs' dining room ceiling. White, as a general contractor, testified that New Hope did not complete its work in a workmanlike manner.

Defendants did not present sufficient evidence to rebut Plaintiffs' assertions of non-workmanlike renovations. Furthermore, the photographs presented at trial show defects in the work and insufficient performance by New Hope, which leads this Court to conclude that New Hope breached its implied warranty of good quality and workmanship. Therefore, I find in favor of Racheal on this claim.

### III. Consumer Fraud

Racheal also alleges New Hope violated *6 Del. C. § 2513(a)*, a subsection of the *Delaware Consumer Fraud Act* ("*DCFA*"). The *DCFA* was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within the State."[44] To bring a cause of action under the *DCFA*, the plaintiff must allege: "(1) the defendant engaged in conduct which violated the statute; (2) the plaintiff was a 'victim' of the unlawful conduct; and (3) a causal relationship exists between the defendant's unlawful conduct and the plaintiff's ascertainable loss."[45] *Section 2513(a)* of the *DCFA* defines an unlawful practice as:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such

---

[44] *6 Del. C. § 2512.*
[45] *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 693 (Del. 2016).

concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[46]

The *DCFA* differs from common law fraud in three ways: (1) the defendant need not intend to make the misrepresentation or omission of material fact, but has to intend the plaintiff rely on his omission or misrepresentation; (2) an unlawful practice is committed regardless of actual reliance by the plaintiff; and (3) defendant's misrepresentations need to be made with the intent to induce action or inaction by the plaintiff, but plaintiff does not need to prove actual intent.[47] In all other aspects, "the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit."[48]

In the instant matter, Racheal alleges New Hope violated the *DCFA* by making misrepresentations as to the work New Hope was contracted to perform. Upon review of the evidence before the Court, I find that Racheal has failed to demonstrate how New Hope made a misrepresentation of a material fact in connection with the sale of the proposed renovations. Racheal contends New Hope made a misrepresentation by proposing work New Hope never intended to complete. However, Delaware Courts have held a "breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party never intended to perform."[49]

Racheal's secondary argument is that New Hope violated the *DCFA* by misrepresenting the fact that Czerwinski was licensed, experienced, and competent to perform the renovations. This includes the proposed electrical and plumbing work, which

---

[46] 6 *Del. C.* § 2513(a).
[47] *See Teamsters Local 237 Welfare Fund,* 136 A.3d at 693.
[48] *Id.*
[49] *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, 2016 WL 3678544, at *4 (Del. Super. July 1, 2016).

16

Racheal insists must be performed by professionals licensed in those fields. However, Racheal has failed to provide the Court with evidence that the proposed renovations to the master bathroom and powder room required a licensed electrician or plumber. Furthermore, Czerwinski testified that he did use an electrician for some of the electrical work performed, and Racheal has failed to provide evidence to rebut his testimony. Moreover, there is no evidence on record that Defendants made a misrepresentation as to Czerwinski's qualifications prior to the parties entering into the contract. Accordingly, the Court finds in favor of New Hope on Racheal's consumer fraud claim.

## IV. Deceptive Practices in Consumer Contracts

Racheal's remaining argument is that New Hope engaged in deceptive practices, in violation of Title 6, Chapter 27, Subchapter IV of the Delaware Code governing consumer contracts. Under this statute, a merchant engages in a deceptive practice when that merchant: (1) distorts or obscures the terms, conditions or meaning of the contract or creates a likelihood of confusion or misunderstanding by the use of unintelligible words, phrases or sentences; or (2) omits information required by law to be disclosed in contracts with consumers.[50] A merchant who is found to engage in a deceptive practice "shall be liable to the consumer in an amount equal to treble the amount of actual damages proved, plus reasonable attorney's fees."[51]

To determine whether a consumer contract complies with the statute, the Court must take into consideration the following factors: (1) whether the contract's cross-references are confusing; (2) whether the contract's sentences are unreasonably long or complex; (3)

---

[50] 6 *Del. C.* § 2732.
[51] 6 *Del. C.* § 2734.

17

whether the contract contains double negatives and exceptions to exceptions; (4) whether the contract's sentences and sections are in a confusing or illogical order; (5) whether the contract contains words with obsolete meaning or words that differ in their legal meaning from their ordinary meaning; and (6) whether the contract's conditions, exceptions, and protections for consumers are given equal prominence when compared to the contract's main provisions.[52]

Racheal asserts that New Hope violated the Act by misrepresenting the work to be done, and using misleading language as to the extent of work New Hope intended to perform. However, when considering the above mentioned factors, the Court fails to see how New Hope's contract amounts to deceptive practices. The Racheal-New Hope Contract, and New Hope's supplemental invoices, do not contain any cross-references, any words that are obsolete, or any unreasonably long or complex sentences. The documents do have some grammatical errors, but these errors do not create a level of confusion sufficient for a finding of deceptive practice. Although New Hope's invoices could have gone into greater detail outlining every action New Hope intended to perform with regard to Plaintiffs' renovations, the Court cannot consider brevity a deceptive practice. Accordingly, the Court finds in favor of New Hope on this allegation.

## V. Affirmative Defenses

New Hope has raised a number of affirmative defenses to Racheal's claims. New Hope argues Racheal's claims are barred under the doctrine of laches and by the statute of limitations. Both the statute of limitations and the doctrine of laches function as time bars

---

[52] 6 *Del. C.* § 2733.

to lawsuits. In Delaware, an action for breach of contract must be brought within three years from the date that the cause of action accrued.[53] In the matter *sub judice*, the events which gave rise to this litigation occurred in 2016, which is also the same year Plaintiffs brought this action. Accordingly, I find that the statute of limitations defense is inapplicable. Moreover, while the statute of limitations operates as a time-bar to actions at law, the doctrine of laches applies only to actions in equity.[54] The instant matter is an action at law; therefore, New Hope cannot raise the equitable defense of laches.

New Hope also raises the defense of accord and satisfaction. In order to prevail on the defense, a litigant must show: "(1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt."[55] The party asserting the affirmative defense of accord and satisfaction bears the burden of proof to show that an accord and satisfaction has been reached.[56] Turning to the matter before the Court, New Hope has failed to demonstrate that a bona fide dispute existed between the parties as to the amount owed. In fact, the evidence shows that Racheal paid all the amounts owed under the renovation contract, and her only dispute concerns the quality of the work and not the amount owed. Accordingly, New Hope's accord and satisfaction defense must fail.

---

[53] *See* 10 *Del. C.* § 8106.
[54] *See Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009).
[55] *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068 (Del. 1997).
[56] *See Wilmington Stevedores, Inc. v. Steel Suppliers, Inc.*, 511 A.2d 2 (Del. 1986).

Lastly, New Hope contends Racheal failed to mitigate her damages under the contract. In Delaware, if it is feasible to do so, a party is generally obligated to mitigate damages.[57] "[A] party cannot recover damages for loss that he could have avoided by reasonable efforts."[58] In other words, "the injured party has a duty to minimize . . . its costs and losses."[59] Generally, the duty to mitigate damages arises after a defendant has breached its duty to a plaintiff.[60] As discussed *supra*, Racheal hired HWI to correct New Hope's mistakes. I find that Racheal's hiring of HWI is a reasonable effort to mitigate her damages. Accordingly, New Hope's defense based upon a failure to mitigate damages also fails.

## CONCLUSION

For all the foregoing reasons, I find New Hope in breach of contract and in breach of the implied warranty of good quality and workmanship, and enter judgment in favor of Racheal in the amount of $10,073.71, plus costs and interest until paid.


**IT IS SO ORDERED.**


_____
                              Alex J. Smalls,
                              Chief Judge

Conaway-OP  May 31 2017

---

[57] *See John Petroleum, Inc. v. Parks*, 2010 WL 3103391, at *6 (Del. Super. June 4, 2010).
[58] *Id.* (citing *West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC,* 2009 WL 458779, at *4 (Del. Ch. Feb. 23, 2009).
[59] *John Petroleum, Inc.*, 2010 WL 3103391, at *6.
[60] *See McKinley v. Casson*, 80 A.3d 618, 627 (Del. 2013).